DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | P.O. CASE NO. 19-00100 |
| Plaintiff, | |
| vs. | **BENCH TRIAL DECISION** |
| LORENA SALAZAR, | |
| Defendant. | |

The above matter became before the court for a bench trial on July 2, 2019. Defendant, Lorena Salazar, is charged in Citation Number 6887663 with failing to stop at a stop sign in violation of 16 GCA §3334(b) as assimilated under 18 U.S.C. §13. The Government presented the testimony of Officer Timothy Daniel Garcia, during which Exhibits 1, 2a, 2b, 2c, 3a, and 3b were admitted into evidence. The Defendant testified on her behalf. At the conclusion of the trial, the court took the matter into deliberation. After having reviewed the testimony of the witnesses, the exhibits admitted into evidence, and closing arguments by the parties, the court now enters its decision herein.

**BACKGROUND**

On April 2, 2019, at approximately 11:56 a.m., Officer Timothy Garcia issued Ms. Salazar Citation Number 6887663. Ms. Salazar was cited for the offense "Disobey Stop Sign" on Route 1 by Sumay Road in violation of 16 GCA §3444(b) as assimilated under 18 U.S.C. 13. The citation directed Ms. Salazar to pay a fine amount of $110 or appear in court. Ms. Salazar acknowledged the citation and the directions therein by affixing her signature on the bottom of the citation.

Subsequent to the issuance of the citation to Ms. Salazar, Officer Garcia filled out the Statement of Probable Cause section on the citation. Therein, Officer Garcia wrote:

> I state that on April 2, 2019, while exercising my duties as a law enforcement officer in the District of Guam I was traveling south on Route 1 inner lane approaching Sumay Rd. when I observed said vehicle on Sumay Rd approaching Route 1. **The vehicle slowed and rolled through failing to stop at the posted stop sign**. Upon making a right turn on to Route 1, I then made a U-turn, activated my patrol vehicles emergency lights and sirens to initiate a Traffic stop which the vehicle then came to a stop on the shoulder of Route 1 by San Luis...........
>
> The foregoing is based upon my personal observation.....
> Executed on 04/02/2019. (Signed by Officer Duenas.)

Ms. Salazar made her initial appearance before the court on May 21, 2019 and had counsel appointed for her. She contested the citation and her hearing was continued to June 18, 2019. At the June 18, 2019 hearing, her matter was continued for a bench trial on July 2, 2019. Ms. Salazar is charged with a violation of 16 GCA §3334(b), a Guam law, which provides:

> b) It shall be unlawful for the operator of any vehicle, except as is otherwise provided in this Section, before entering a stop section, to fail to come to a full stop, within a reasonable distance, before entering the intersection, when an official "Stop" sign or signs have been erected in accordance with the provisions of this Title.

Under 16 GCA §9108, a person who violates the above section is guilty of a petty misdemeanor because there is no different punishment provided for a violation of §3334(b). Pursuant to 9 GCA §80.34(b), a person who is guilty of a petty misdemeanor may be sentenced to not more than 60 days imprisonment.

Under 18 U.S.C. §13, the above crime is assimilated under the Assimilative Crimes Act because the above violation is not made punishable by an act of Congress, but rather by Guam law. Applying federal criminal statute sentencing terms, (18 U.S.C. §3581(b)(7), the crime is a Class B misdemeanor.

Ms. Salazar has contested the charge against her. Thus, she has exercised her right to plead not guilty and to persist in that plea. She is entitled to a bench trial before the court. Upon such trial, she is presumed to be innocent and the Government has to prove her guilt reasonable doubt.

**TRIAL TESTIMONY**

At trial, the Government called Officer Garcia to testify. In his testimony, Officer Garcia testified that he was employed by the Department of Navy-Security Department and had been employed there since 2001 as a police officer. He stated that he had received training in various patrol officer requirements, including firearms, use of lethal and non-lethal weapons, and other training. He further testified that he had been a Guam Police Department (GPD) officer from 2008 to 2011 as a Police Officer I. He transferred to the Department of Navy in 2011 but remained as a GPD reservist until 2017.

Officer Garcia was presented with Exhibit 1 and was asked to identify it. He stated it was a citation that he wrote. It contained his name and his signature. He testified that it was his regular practice as a police officer to issue citations as the one in Exhibit 1. He also said it was his regular practice to keep records of the citations that he had issued. He identified the citation in Exhibit 1 as the one he had issued except that it was a copy of it. The information contained therein was the same as he had remembered it when he issued the citation. Exhibit 1 was therefore moved into evidence and admitted without objection. The officer indicated that he had issued the citation for disobeying a stop sign under U.S.C. Title 18 and Guam Code Annotated Title 16, section 3334 "bravo." Officer Garcia was further asked what the right side of the citation contained and he replied it was his probable cause statement. He was asked to read the statement, which he did. He stated that the incident occurred at the intersection of Route 1-Marine Drive and Sumay Road and is located inside Guam Naval Base.

Officer Garcia was asked to review Exhibit 2a. He indicated he was familiar with its depiction and that it was a satellite view of Sumay Road connecting with Route 1 and the other nearby streets. He further stated that he pulled up the satellite image and created the image in the exhibit. He stated he had never seen an aerial view of the intersection but the satellite image does depict the view of the intersection. Exhibit 2a was admitted into evidence without objection.

Officer Garcia was then asked to review Exhibits 2b and 2c. With regard to Exhibit 2a, he testified it was the direction on Sumay Road approaching Route 1.

1    With regard to Exhibit 2c, he testified it was a picture of the road facing south on Route 1
2    approaching Sumay Road which was on the left. Officer Garcia further stated that he took the
3    photographs depicted in Exhibits 2a and 2b and placed the words superimposed on the photos.
4    He further stated the photos accurately depict the intersection between Route 1 and Sumay Road.
5    Without any objection, Exhibits 2b and 2c were admitted into evidence.
6    Officer Garcia testified that the stop sign, which was at issue when the citation was
7    issued, was clearly visible as it is depicted in Exhibit 2b. Moreover, there was nothing at
8    that intersection which would impede a driver's view of the stop sign.
9    With respect to Exhibit 2c, the officer stated that this was the angle in which he saw the
10   events which lead to the issuance of the citation.
11   Officer Garcia testified that Ms. Salazar's vehicle was traveling west onto Route 1 as
12   that is shown in the photo image and that he was traveling on Route 1 heading south. He stated
13   there was nothing which obstructed his view of the intersection.
14   Officer Garcia was then asked to review Exhibits 3a and 3b.
15   With regard to Exhibit 3a, the officer testified that it was a layout of the direction in
16   which he was traveling with his patrol vehicle colored blue and the direction of the subject
17   vehicle colored red. He stated that the direction of travel was not to scale. He further stated
18   that the exhibit was a layout of his traffic stop of Ms. Salazar's vehicle and the direction where
19   the pullover was made. He said he created the image and overlaid it with the respective
20   vehiclesWith regard to Exhibit 3b, Officer Garcia also reiterated that his patrol vehicle was
21   the color blue and the subject vehicle was colored red.
22   Without any objection, Exhibits 3a and 3b were admitted into evidence.
23   In relation to Exhibit 3a, he testified that he was on the inner lane traveling south on
24   Route 1 when he observed Ms. Salazar's vehicle traveling west on Sumay Road approaching
25   Route 1. The vehicle slowed down but failed to make a complete stop as it made a right turn
26   unto Route 1. When asked to elaborate further, Officer Garcia testified he could not tell the
27   speed Ms. Salazar's vehicle was traveling as it approached the intersection but her vehicle did
28   not come to a complete stop. He described coming to a complete stop as occurring when all four

tires of the vehicle are no longer in motion. Since Ms. Salazar's vehicle failed to come to a complete stop, he activated his lights and sirens and made a U-turn to effectuate a pull over. He approached Ms. Salazar and informed her he was citing her for not stopping at the stop sign. He stated that the position of the cars was as indicated in Exhibit 3b showed where he pulled Ms. Salazar over but that it was not to scale. He also said that the weather conditions were clear that day and it was not raining. He issued the citation around 11:56 a.m. He stated he remembered Ms. Salazar giving him her driver's license. He identified Ms. Salazar in court as the driver of the subject vehicle.

During cross-examination, Officer Garcia testified he was driving alone in a marked police vehicle on the day he issued his citation. He stated that was heading south on Route 1, having come from Lockwood Housing. In reference to Exhibit 2a, he testified he was traveling on San Luis Road before making a right turn to go south on Route 1. He said he was close to the intersection when he saw the violation. When asked how far way approximately he was when he saw the vehicle roll through the intersection, Officer Garcia said he could not recall. He was shown Exhibit 3a and questioned whether the placement of the vehicles therein were accurate. He stated it was not since it was not to scale but it depicted the general area where the incident occurred. He clarified his testimony by stating that his police vehicle was facing a southerly direction in that general area. When further asked where his vehicle was, Officer Garcia stated that he had just passed the driveway that lead to the marina when he saw the vehicle roll through the intersection. Thus, he was somewhere between the marina driveway and Sumay Road when he saw the incident. He said it was approximately two hundred feet, maybe three hundred feet from the intersection to the marina driveway.

When questioned with regard to Exhibit 1, Officer Garcia stated that he prepared the probable cause statement right after the incident and that writing it took approximately five minutes.

Officer Garcia was also questioned regarding the number of citations he had issued compared to other police officers and whether he had a propensity for doing so. He was informed by defense counsel that he had issued 80% of the citations which had been set for

hearing earlier in the morning. Officer Garcia responded that he could not comment on how other officers performed their duties.

The Government rested at the conclusion of Officer Garcia's testimony.

Thereafter, Ms. Salazar took the stand and testified on her behalf.

She stated she was a Personnel Officer at Naval Base Guam. She said she had been in the Navy for seventeen (17) years and six months and had been assigned to Guam for the past three years. Prior to being the Personnel Officer, she was the Senior Enlisted Officer.

Recalling the incident of April 2, 2019, she testified that she was driving her vehicle, a Honda Accord, on Sumay Road heading towards the Route 1 intersection. She was alone in the vehicle. As she approached the intersection she made a stop at the stop sign. Ms. Salazar was shown Exhibit 2a and was asked where did she see the patrol car when she had reached the intersection. She replied that the patrol car was approaching Route 1 from San Luis Road. She further testified that the patrol car was heading down on Route 1 and she was heading up on Route 1. Ms. Salazar again reiterated that when she stopped at the stop sign the patrol car was also stopped at the stop sign on San Luis Road. She stated it was approximately a quarter mile from her position at Sumay Road intersection to the intersection at San Luis Road with no road obstruction. When asked how she knew that, Ms. Salazar stated that she lived at Lockwood Housing and that was the route she took to work every morning. She also said that she runs and walks on that road every day with her family where she has lived for the past three years.

When asked whether she stopped when she came to the stop sign, Ms. Salazar stated that she did. She again stated her familiarity with the area and the activities she did daily which lead to that familiarity. On that particular day, she was heading home to lunch but indicated she was not in a hurry. She again stated that she did not roll through the intersection. After stopping at the Sumay Road stop sign, she made a right turn and then was pulled over by Officer Garcia. When she rolled down her window, Officer Garcia informed her that he was pulling her over because she did not stop at the stop sign. She replied that she did not fail to stop. At that point, the Officer asked for her ID, driver's license, and car registration.

She also stated that she did not receive the probable cause statement at the time that she

received her citation.

Ms. Salazar testified that she had not received any traffic tickets while living here in Guam but that she did have a traffic ticket when she was living in Virginia approximately seven years ago and before that when she was living in New York. She said that living on base has made her very careful because it is where her children live and that is why she does not speed on base or fail to stop when stop signs are posted. She again testified that when she approached the stop sign on Sumay Road, she saw the patrol car stopped at the stop sign on San Luis Road. She further stated that she had seen the patrol car on San Luis Road approach the stop sign intersection on Route 1 because there was no obstruction of that view from her Sumay Road view once a vehicle passes the trees on San Luis Road as it approaches the Route 1 intersection.

During cross-examination, Ms. Salazar explained that she saw the patrol car heading down on Route 1 as she entered the intersection. She stated that she stopped at the intersection and looked to her left and proceeded to enter the intersection as there were no cars on the intersection from her left side. She also stated there were no cars then on the road.

Upon further questioning, Ms. Salazar agreed that Sumay Road curves as it heads to the Route 1 intersection. She also stated that as she makes that curve, she always takes a look at San Luis Road because that was where she is heading and the view there is unobstructed from Sumay Road. She stated that as she was making the curve to go to Sumay Road she saw the patrol car heading to the stop sign on San Luis Road. Moreover, she stated it would only take her a few seconds to get to the Route 1 intersection. When asked whether it was possible that she made a California stop, Ms. Salazar said no and that she had come to a full stop.

After her examination was complete, the court asked Ms. Salazar what a California stop was. Ms. Salazar stated it was when you don't come to a full stop. She further stated that it was what the officer told her that she had to have made a complete stop and not a California stop. Upon further questioning, she testified that when she made her right turn the Officer was already heading down on Route 1.

In response to her counsel's question, Ms. Salazar stated that she was pulled over on the grass land area closer to San Luis. She also testified that the placement of the vehicles in Exhibit

1  3b was not accurate based upon her recollection. The pullover occurred after the marina
2  driveway and not before it. She stated that if the pullover was indeed the location as it
3  was shown in Exhibit 3b, the pullover would have been right by the Sumay Road-Route
4  1 intersection, but it was not.

After Ms. Salazar's testimony, the Defense rested and the Government had no rebuttal witnesses. Thereafter, the parties made their closing arguments.

## DISCUSSION

Defendant, Ms. Salazar, is presumed to be innocent unless and until the Government proves her guilty beyond a reasonable doubt. The government has the burden of proving every element of the charge beyond a reasonable doubt. See Model Criminal Jury Instruction 3.2.

Proof beyond a reasonable doubt is proof that leaves the trier of fact firmly convinced the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt. A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

If after a careful and impartial consideration of all the evidence, the trier of fact is not convinced beyond a reasonable doubt that Ms. Salazar is guilty, the trier of fact has the duty to find the defendant not guilty. On the other hand, if after a careful and impartial consideration of all the evidence, the trier of fact is convinced beyond a reasonable doubt that Ms. Salazar is guilty, the trier of fact has the duty to find the defendant guilty. See Model Criminal Jury Instruction 3.5.

In order to show that Ms. Salazar committed the above offense, the Government must prove these elements beyond a reasonable doubt:

1. Ms. Salazar was operating a motor vehicle;
2. On Sumay Road, on land reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof;
3. On or about April 2, 2019; and
4. Before entering the stop section, failed to come to a complete stop, within a reasonable distance, before entering Route 1 intersection;
5. When an official "Stop' sign had been erected at the intersection on Sumay Road.

The Government argues that it has met all the above elements and that the court must find

Ms. Salazar guilty of the above offense. Defendant argues that the Government has failed to prove the fourth element because there is a reasonable doubt whether she failed to come to a complete stop at the posted stop sign on Sumay Road.

The court notes there is conflict in the testimony herein. Officer Garcia testified that Ms. Salazar's vehicle slowed down as it approached the stop section on Sumay Road but failed to make a complete stop as it made a right turn unto Route 1. On the other hand, Ms. Salazar testified that she made a complete stop when she approached the Sumay Road stop section and only made a right turn after having done so. Both witnesses appear to be credible.

Officer Garcia had no prior contact with Ms. Salazar other than when he gave her the citation on April 2, 2019. He gave her the citation based upon his observations that day. As a police officer, he was trained to look for violations and was on duty on the day in question. Defense counsel did however try to show that he had a propensity for issuing citations more than other police officers since 80% of the traffic violations which were heard on the morning of April 2, 2019 had been issued by Officer Garcia.

Ms. Salazar also appeared credible. She was familiar with the area having lived and worked within the vicinity of the Sumay Road-Route 1 intersection. She even testified that she ran and walked with her children within that area.

In considering the testimonies of Officer Garcia and Ms. Salazar, the court is mindful of Model Criminal Jury Instruction 3.95 and takes the following into account:

(1) the witness's opportunity and ability to see or hear or know the things testified to;
(2) the witness's memory;
(3) the witness's manner while testifying;
(4) the witness's interest in the outcome of the case, if any;
(5) the witness's bias or prejudice, if any;
(6) whether other evidence contradicted the witness's testimony;
(7) the reasonableness of the witness's testimony in light of all the evidence; and
(8) any other factors that bear on believability.

Officer Garcia provided his testimony and through his testimony, Exhibits 1, 2a, 2b, 2c, 3a, and 3b were admitted into evidence.

In his direct examination, Officer Garcia testified that he was on Route 1 heading south when he noticed Ms. Salazar traveling west and approaching the Sumay Road intersection with

Route 1.  Ms. Salazar's vehicle slowed down but it rolled through the intersection without coming to a complete stop.  He testified he was close to the Sumay Road-Route 1 intersection when he saw the violation.  When asked how far way was he on Route 1 when he saw the vehicle roll through the intersection, Officer Garcia said he could not recall.  When presented with Exhibit 3a and was asked whether his patrol car was at the location that he had placed it on the Exhibit, he said that it was not.  He said his vehicle's placement there was not accurate since it was not to scale but it was within the vicinity of the general area.  When asked whether he was further north on Route 1, he stated that he had just passed the driveway leading to the marina.  When asked how far away that was, Officer Garcia said it was approximately 200 feet away and might possibly be 300 feet.  He then made a U-turn on Route 1 and activated his lights and siren to pull Ms. Salazar's vehicle over.  He testified that he effectuated the pullover south of the marina driveway.

  Ms. Salazar on the other hand testified that when she reached the Sumay Road stop, Officer Garcia was at the stop sign on San Luis Road and as she headed up on Route 1, Officer Garcia was heading down.  She stated that it was a quarter mile in distance from where she was at (Sumay Road-Route 1 intersection) to where Officer Garcia was at (San Luis Road-Route 1 intersection).  She knew the distance because she was familiar with the area because she lived there and walked and ran in that area with her family.  Ms. Salazar also disputed Officer Garcia's testimony regarding her pullover location.  Officer Garcia stated it was closer to the Sumay Road area and south of the marina driveway.  Ms. Salazar stated it was closer to San Luis Road and north of the marina driveway.

  In weighing the evidence, it appears to the court that Ms. Salazar's recollection of the events which occurred on April 2, 2019 in relation to the citation issued to her is more supported by the evidence.  Officer Garcia was not able to recall how far away he was when he saw Ms. Salazar roll into Route 1 from Sumay Road.  He seemed to go back and forth in trying to explain where his location was.  He first stated he was close to Sumay Road and then indicated that Exhibit 3b which depicted his vehicle location therein in relation to Ms. Salazar's vehicle was not accurate because it was not to scale.  He stated that he saw Ms. Salazar's vehicle roll

1  through the intersection after he had passed the marina driveway which he indicated was
2  200-300 feet from Ms. Salazar's vehicle.  He also stated that he pulled Ms. Salazar over on the
3  shoulder of the road which was south of the marina driveway and closer to Sumay Road.  The
4  court notes, however, that in the Probable Cause Statement of Exhibit 1, Officer Garcia writes:

> Upon making a right turn on to Route 1, I then made
> a Uturn activated my patrol vehicles emergency lights and
> sirens to initiate a Traffic stop which the vehicle then came
> to a stop on the shoulder of Route 1 by San Luis...........

In his Probable Cause Statement, Officer Garcia writes that the vehicle came to a stop on the shoulder of **Route 1 by San Luis Road**.  He testified that he wrote the Probable Cause Statement almost immediately after he had issued the citation to Ms. Salazar and that it only took approximately five minutes to do so.  Thus, his testimony at trial as to where the pullover occurred is not supported by the Probable Cause Statement.  Furthermore, assuming that Officer Garcia saw Ms. Salazar roll through the intersection when he was 200-300 feet away, it calls into question the ability to properly and accurately see whether Ms. Salazar did fully stop at the Sumay Road stop sign.  Angles in observation can be distorted especially if not observed close at hand and more so if observed 200-300 feet away.  Angles in observation can also be distorted if the person is within a moving vehicle, driving, as the driver has to pay attention both to the subject vehicle which is approaching the stop sign intersection as well as to the roadway in front.  While driving, the Officer's continuos view and observation of the intersection may be disrupted for a few seconds to keep an eye on the road in front of him.  A complete stop presumably can occur within three seconds or more.  If Officer Garcia was where Ms. Salazar had placed him (San Luis-Route 1 intersection), he would have been observing a roll through at the Sumay Road stop sign at approximately a quarter mile away.  Angles in observation at that distance (approximately 1,320 feet) may become further distorted.

The discrepancies in Officer Garcia's testimony regarding his inability to place his location when he saw the vehicle roll through the intersection; the exhibits which did not accurately place the vehicles in relation to the incident; the distance involved from where he was at when he saw the roll through; the contradiction in his testimony as to where he made the

Page -11-

pullover when compared to his probable cause statement; and the conflicting testimonies provided by Officer Garcia and Ms. Salazar relative to the stop, collectively create reasonable doubt whether Ms. Salazar failed to make a complete stop when approaching the Sumay Road stop sign prior to entering Route 1.

**CONCLUSION**

Reasonable doubt, having been raised, the court must find that the Government has failed to show beyond a reasonable doubt that the Defendant, Ms. Salazar, failed to come to a complete stop at the Sumay Road stop sign as she was entering the intersection of Route 1.

This matter (Citation Number 6887663) is dismissed with prejudice.



**/s/ Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**
**Dated: Jul 12, 2019**